In the Matter of the Applications of GEORGE WILSON and Others, Petitioners, for Peremptory Mandamus Orders Directed against JOHN A. PRITCHARD, M. D., and Another, as Superintendent and Acting Superintendent, Respectively, of the Buffalo State Hospital, Respondents.

(Four Proceedings.)

Supreme Court, Erie County, July 5, 1934.

A. *Stanley Copeland*, for the petitioners.

*John J. Bennett, Jr., Attorney-General [James A. Noonan, Assistant Attorney-General*, of counsel], for the respondents.

HARRIS, J. Each of the above proceedings is in mandamus to compel the superintendent or acting superintendent of the Buffalo State Hospital to provide certain clothing and certain moneys to the petitioners, who claim that they are entitled to such clothing and money by virtue of the provisions of section 88 (formerly section 86) of the Mental Hygiene Law. Such section is as follows:

"§ 86. Clothing and money to be furnished discharged or paroled patients. No patient shall be discharged or paroled from a state hospital without suitable clothing adapted to the season in which he is discharged or paroled; and if it cannot be otherwise obtained, the steward shall, upon the order of the superintendent, furnish the same, and money not exceeding twenty-five dollars, to defray his necessary expenses until he can reach his relatives or friends, or find employment to earn a subsistence."

Each one of the petitioners has been a patient at the Buffalo State Hospital and has secured release either by means of habeas corpus proceedings or by the hospital being notified that such habeas corpus proceedings would be brought.

The petitioner Wilson, on the habeas corpus proceeding in his behalf, made proof to the court that he was able to find and perform labor for his own support. Several months elapsed from the time that he was discharged to the bringing of the above proceeding in his behalf. He claims that he needed underwear when he left the hospital but evidently he has been able to obtain the same.

The petitioner Lukaszewska was discharged in the custody of friends. There is no claim that she lacked clothing at the time of her discharge. However, she claims to have lost her false teeth and her eye-glasses while she was in the hospital and through the fault of the hospital authorities. There is a dispute made by the hospital authorities as to the loss of such articles and as to whether it was their fault, but whether it was their fault or not, certainly these articles do not come within the purview of the above quoted section of the Mental Hygiene Law. It would appear that her remedy, if any, would be a claim against the State.

The petitioner Bomgarger apparently was fully clothed when he left the hospital and rejoined his wife and eight-year old child who were then on public relief and he apparently joined in their household arrangements.

None of the three above-named petitioners left the city of Buffalo, which has been and is the place of their residence.

The petitioner Springer was discharged into the custody of his brother and returned with his brother to the brother's home at Pittsburg, Pa., where he has since remained. He was furnished a suit of clothing by the hospital as he apparently needed the same.

On their release, and on advice of counsel, each of these petitioners demanded from the superintendent or acting superintendent of the hospital certain clothing and the sum of twenty-five dollars. So far as the money and clothing were concerned, except as to the clothing of the petitioner Springer, such demands were refused.

On argument it was contended by the Attorney-General, and conceded by counsel for the petitioners, that the provisions of section 88 of the Mental Hygiene Law are not mandatory on the superintendent of the hospital, but the claim is made that his failure to comply with the demand was an abuse of discretion in each instance. This court is of the opinion that the intention of the Legislature in enacting this section was to provide that no patient should be discharged or paroled unless he had sufficient clothing to cover and protect himself and sufficient ways or means to reach his relatives or friends or to earn his support.

There are two somewhat similar sections in the Correction Law (see section 125, in reference to prisoners in general, and section 409, in reference to inmates of Matteawan State Hospital). These sections apparently are mandatory, at least in reference to the money to be given to discharged prisoners, but they may be distinguished from section 88 of the Mental Hygiene Law in that the provision made for discharged prisoners is undoubtedly made to prevent their being in desperate need and to prevent their congregating in the territory adjoining the prison and to permit them to return to their homes. Section 88 of the Mental Hygiene Law, in the opinion of this court, is for the purpose of giving the superintendent of a hospital authority and placing upon him the duty to see that inmates discharged or paroled are started out of the hospital decently clad and under such circumstances that they will be in the care of somebody interested in their welfare or that they will be able to earn their living. A violation of such duty on the part of the superintendent undoubtedly would be the basis of the issuance of mandamus, but in each of the above-entitled proceedings the petitioner left the hospital properly clad and under such circumstances that the superintendent or acting superintendent could safely feel that the petitioner was in the hands of friends or able to take care of himself or herself. Expenditure of money by the superintendent or acting superintendent under such circumstances would be an abuse of his authority.

The proceedings herein are all dismissed.